IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| **KENNETH ROSS RICHARDSON,** § | | |
| Plaintiff, § | | |
| v. § | Civil Action No. 3:21-CV-0676-D-BH | |
| § | | |
| **ANDREW SAUL,** § | | |
| **COMMISSIONER OF SOCIAL** § | | |
| **SECURITY ADMINISTRATION,** § | | |
| Defendant. § | Referred to U.S. Magistrate Judge[1] | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION**

Based on the relevant filings, evidence, and applicable law, the final decision of the Commissioner of Social Security (Commissioner) denying the plaintiff's claims for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) under Titles II and XVI of the Social Security Act (the Act), 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3), should be **AFFIRMED**.

### I. BACKGROUND

Kenneth Ross Richardson (Plaintiff) filed his applications for DIB and SSI on April 17 and April 19, 2019, respectively, alleging disability beginning March 16, 2019. (doc. 18-1 at 60, 76, 272.)[2] His claim was denied initially on July 2, 2019, and upon reconsideration on September 6, 2019. (*Id.* at 59-101.) After requesting a hearing before an Administrative Law Judge (ALJ), he appeared and testified at a hearing on July 17, 2020, which was held by telephone due to the "extraordinary circumstance" presented by the coronavirus pandemic. (*Id.* at 32-58, 119.) On August 14, 2020, the ALJ issued an unfavorable decision finding that Plaintiff had not been under a disability from March 16, 2019, through the date of the decision. (*Id.* at 19-27.)

---

[1] By *Special Order 3-251*, this social security appeal was automatically referred for proposed findings of fact and recommendation for disposition.

[2] Citations to the record refer to the CM/ECF system page number at the top of each page rather than the page numbers at the bottom of each filing.

Plaintiff timely appealed the ALJ's decision to the Appeals Council on August 27, 2020. (*Id.* at 8.) The Appeals Council denied his request for review on January 25, 2021, making the ALJ's decision the final decision of the Commissioner. (*Id.* at 5-7.) He timely appealed the Commissioner's decision under 42 U.S.C. § 405(g). (doc. 1.)

**A.  Age, Education, and Work Experience**

Plaintiff was born on June 4, 1962; he was 58 years old at the time of the hearing. (doc. 18-1 at 186.) He had a high school education and could communicate in English. (*Id.* at 36-37.) He had past relevant work as a tractor trailer truck driver, industrial truck operator, store laborer and industrial cleaner. (*Id.* at 56.)

**B.  Medical, Psychological and Psychiatric Evidence**

On March 26, 2019, Plaintiff visited the emergency room at Parkland Health and Hospital System (Parkland) with lower back pain that radiated into the bilateral lower extremities. (*Id.* at 285-87.) Degenerative disease with slight deformity of the L2 vertebral body was observed, and mild peripheral edema in the bilateral lower extremities and paraspinal lumbar tenderness was assessed. (*Id.* at 287, 299, 388.) He had a steady gait, normal coordination, and intact strength and sensation in his lower extremities; his mood, affect, behavior, judgment, and thought content were normal. (*Id.* at 408.)

On April 11, 2019, Robert B. Simonson, M.D., completed a one-page physician's statement in which he diagnosed Plaintiff with lumbago, advised him to avoid "prolonged" sitting or standing, and opined he could not work until he was cleared by a neurosurgeon. (*Id.* at 275.) There were no physical examination records to supplement the statement. (*Id.*)

The next day, on April 12, 2019, Plaintiff reported back pain and difficulty sitting, standing, and bending, and he had light touch sensation deficits in his left foot. (*Id.* at 277-79, 296-97.)

Imaging revealed lumbar spondylosis that was worse at L5-S1, moderate tricompartmental degenerative changes most prominent in the medial compartment, and small suprapatellar effusion in the left knee. (*Id.* at 278-79, 283-84, 296-98.) He was assessed with L3-L5 stenosis and disc disease, and broad-based disc bulges in L3-S1 with spinal foraminal narrowing bilaterally at these levels, as well as mild palpable crepitus in the left knee with mild effusion, and sacroiliac joint tenderness with straight leg raise on the left side. (*Id.* at 278, 297.) He was advised not to sit or stand for long periods of time and referred for physical rehabilitation. (*Id.* at 279.)

On June 19, 2021, Plaintiff reported he could go out alone, perform his own personal care, manage his finances, follow instructions, pay attention, and handle stress. (*Id.* at 224-31.) Two days later, on June 21, 2019, he presented to Parkland with lower back, arm, and leg pain, and swelling in the left knee radiating to the left ankle. (*Id.* at 328-34.) He had paraspinal lumbar tenderness and mild edema to the right knee, as well as good grip strength, 5/5 motor strength, and independent ambulation. (*Id.* at 328-31.)

On June 26, 2019, State Agency Medical Consultant (SAMC) Laurence Ligon, M.D., examined Plaintiff's medical records. (*Id.* at 59-72.) He noted Plaintiff's claims of back and knee problems, diabetes, arthritis, bipolar disorder and schizophrenia. (*Id.* at 62.) The medical evidence indicated a history of broad disc bulges in L3-S1 with spinal foraminal narrowing bilaterally and occasional radicular pain, but he noted that Plaintiff retained 5/5 strength, was able to ambulate without issues, and had a negative straight leg raise and intact tandem gait. (*Id.* at 63.) Plaintiff's activities of daily living indicated he used a walker and was "only" able to walk 20 yards. (*Id.*) Dr. Ligon concluded that the preponderance of evidence did not support the findings of a severe medically determinable impairment and that his alleged impairments were not wholly supported by the medical evidence of record. (*Id.*) There was no Residual Functional Capacity (RFC)

Assessment. (*Id.* at 59-65.)

On July 31, 2019, Plaintiff reported that his lower back pain was worsening and his medication was not working, and his imaging was positive for herniated discs of the lower spine. (*Id.* at 363-66.) He had full range of motion in his back, normal joints, and normal neurological findings. (*Id.* at 365.) His body position was assessed at 60 to 80 percent impaired; in August 2019, he completed a back/neck class and was discharged from physical therapy after "achiev[ing] [his] goals." (*Id.* at 355, 361-62.)

On September 4, 2019, he presented to Jennifer Marisa Guerrero, Ph.D., for a mental health evaluation. (*Id.* at 442-46.) He endorsed irritability, isolation and difficulty sleeping, and his scores on the PHQ-9 and GAD-7 screenings showed severe levels of depression and anxiety. (*Id.* at 443-44.) Dr. Guerrero noted diminished interest, depressed mood, and sleep disturbance, and diagnosed a moderate episode of recurrent major depression and unspecified type of anxiety. (*Id.* at 440.)

On September 5, 2019, SAMC Thomas VanHoose, Ph.D., examined Plaintiff's medical records, which showed no mental diagnosis, treatment, or limitations. (*Id.* at 82-83, 92-93.) He concluded there was no mental medically determinable impairment. (*Id.* at 83, 93.)

The same day, SAMC Dorothy Leong, M.D., completed an RFC assessment for Plaintiff based on the medical evidence. (*Id.* at 83-85, 93-95.) She opined that Plaintiff had the physical RFC to lift and/or carry 50 pounds occasionally and 25 pounds frequently; stand and/or walk for about 6 hours in an 8-hour workday; sit for about 6 hours in an 8-hour workday; push and pull an unlimited amount of weight, other than that shown for lift and carry; and no postural, manipulative, visual, communicative, or environmental limitations. (*Id.* at 84, 94.)

C.  **July 17, 2020 Hearing**

On July 17, 2020, Plaintiff and a VE testified at a hearing before the ALJ. (*Id.* at 32-58.)

4

Plaintiff was represented by an attorney. (*Id.*)

    1. *Plaintiff's Testimony*

Plaintiff testified he had a high school education and last worked driving cars at an auction, until he was laid off in February 2020 due to the pandemic. (*Id.* at 36-38.) Before that, he moved trailer trucks within the yard so they could be loaded with merchandise, but he could not keep the job because he was "too slow." (*Id.* at 38-39.) Plaintiff also drove forklifts, but he was let go because it was hard for him to get on and off the forklift. (*Id.* at 39-40.) In 2013, he had his own business detailing cars, but it "didn't work out for [him] either." (*Id.* at 41.) For two months, he managed a car wash, but he could not do all the walking necessary for the job. (*Id.*)

In 2019, Plaintiff slipped off a truck and injured his head and back. (*Id.* at 42.) Although his medical bills were paid, he did not get worker's compensation because he was working for a staffing company at the time. (*Id.* at 42-43.) In April 2019, surgery for his deteriorating discs was recommended, but the surgeon was "reluctant" to do it because Plaintiff's back was "so bad." (*Id.* at 43-44.) Body mechanics classes did not help, and neither did his pain medication, which caused side effects like nausea and paranoia. (*Id.* at 44-45, 54.) His back pain radiated and caused numbness in his arms and tingling in his hands about once or twice a week. (*Id.* at 54-55.) He could not lift 10 pounds, but he could "maybe" lift a gallon of juice. (*Id.* at 47.)

Plaintiff had constant pain and swelling in his knee that was not relieved by elevation; it got aggravated when he stood and had locked and caused him to fall. (*Id.* at 51-52.) To walk, he used a cane, which he had gotten from the hospital about a year earlier. (*Id.* at 51-52.) He also used a walker, which he got from a family member that had wheels and kept him steady when he went for a "little extra" walk. (*Id.* at 52.) To shop in stores, he used an electric cart. (*Id.* at 47.)

Plaintiff could not tie his shoes, bend down to wash his feet, squat to pick up something

off the floor, walk long distances, reach overhead to grab something on a shelf, or stand long enough to wash dishes; he also had trouble climbing stairs. (*Id.* at 45, 51, 53.) He could not drive because it hurt and he needed to "lean back." (*Id.* at 46.) He could not lie in bed because it was hard to get up afterwards, and he did not sleep at night due to the pain. (*Id.*) Sitting upright with his legs lower than his hips made the pain worse, so he spent most of the day reclining. (*Id.* at 52-53.) His most comfortable position was sitting in a "rising" chair in his living room, where he sometimes slept. (*Id.* at 46-47.) Changes in weather and vacuuming hurt his back. (*Id.* at 48.)

Plaintiff had been diagnosed with anxiety, which he thought was "connected" to his back and knee issues. (*Id.* at 54.) He had experienced a panic attack "a long time ago" but had not had one in the last several years. (*Id.*) He endorsed depression throughout his life, especially after his parents died, but he stopped taking medication for it because it made him sleepy and he could not function. (*Id.* at 48-49.) His depression had not impacted his ability to do his job. (*Id.* at 49.)

Plaintiff took Metformin insulin pills for his diabetes, which made him go to the restroom "a lot." (*Id.* at 49-51.)

2. *VE's Testimony*

The VE confirmed that her testimony was consistent with the Dictionary of Occupational Titles (DOT), and that she would indicate when it was not. (*Id.* at 55.) Plaintiff had past work as a tractor trailer truck driver, DOT 904.383-010 (medium, semi-skilled, SVP: 4)[3]; industrial truck operator, DOT 921.683-050 (medium, semi-skilled, SVP: 3); stores laborer, DOT (922.687-058 (medium, unskilled, SVP: 2); and industrial cleaner, DOT 381.687-018[4] (medium, unskilled, SVP: 2). (*Id.* at 56.) None of these skills transferred to light or sedentary work. (*Id.* at 56-57.)

---

[3] SVP stands for Specific Vocation Preparation.

[4] The VE initially testified the DOT was *318*.687-018. (doc. 18-1 at 56.)

On cross-examination, the VE responded that a hypothetical individual who needed to recline or lie down for at least two hours during the workday outside of normal breaks could not recline or lie down at his workstation. (*Id.* at 57.)

### D. ALJ's Findings

The ALJ issued her decision on August 14, 2020. (*Id.* at 19-21.) At step one, she found that Plaintiff had met the insured status requirements through December 31, 2023, and had not engaged in substantial gainful activity since the alleged onset date of March 16, 2019. (*Id.* at 24.) At step two, she found that since the alleged onset date, he had the medically determinable impairments of obesity, osteoarthritis, lumbar spondylosis, asthma, diabetes mellitus, mild non-proliferative retinopathy, gastroesophageal reflux disease (GERD), anxiety, and depression. (*Id.*) Despite those impairments, the ALJ concluded that Plaintiff did not have a severe impairment or combination of impairments. (*Id.* at 25.) Accordingly, he had not been under a disability, as defined by the Social Security Act, from March 16, 2019, through the date of her decision. (*Id.* at 27.)

## II. STANDARD OF REVIEW

Judicial review of the Commissioner's denial of benefits is limited to whether the Commissioner's position is supported by substantial evidence and whether the Commissioner applied proper legal standards in evaluating the evidence. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994); 42 U.S.C. §§ 405(g), 1383(C)(3). Substantial evidence is defined as more than a scintilla, less than a preponderance, and as being such relevant and sufficient evidence as a reasonable mind might accept as adequate to support a conclusion. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995). In applying the substantial evidence standard, the reviewing court does not reweigh the evidence, retry the issues, or substitute its own judgment, but rather, scrutinizes the record to determine whether substantial evidence is present. *Greenspan*, 38 F.3d at 236. A finding

of no substantial evidence is appropriate only if there is a conspicuous absence of credible evidentiary choices or contrary medical findings to support the Commissioner's decision. *Johnson v. Bowen*, 864 F.2d 340, 343-44 (5th Cir. 1988).

The scope of judicial review of a decision under the supplemental security income program is identical to that of a decision under the social security disability program. *Davis v. Heckler*, 759 F.2d 432, 435 (5th Cir. 1985). Moreover, the relevant law and regulations governing the determination of disability under a claim for disability insurance benefits are identical to those governing the determination under a claim for supplemental security income. *See id.* The court may therefore rely on decisions in both areas without distinction in reviewing an ALJ's decision. *See id.*

To be entitled to social security benefits, a claimant must prove that he or she is disabled as defined by the Social Security Act. *Leggett*, 67 F.3d at 563-64; *Abshire v. Bowen*, 848 F.2d 638, 640 (5th Cir. 1988). The definition of disability under the Social Security Act is "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *Anthony v. Sullivan*, 954 F.2d 289, 292 (5th Cir. 1992).

The Commissioner utilizes a sequential five-step inquiry to determine whether a claimant is disabled:

1. An individual who is working and engaging in substantial gainful activity will not be found disabled regardless of medical findings.

2. An individual who does not have a "severe impairment" will not be found to be disabled.

3. An individual who "meets or equals a listed impairment in Appendix 1" of the regulations will be considered disabled without consideration of vocational factors.

4. If an individual is capable of performing the work he has done in the past, a finding of "not disabled" must be made.

5. If an individual's impairment precludes him from performing his past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if work can be performed.

*Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir. 1991) (summarizing 20 C.F.R. § 404.1520(b)-(f)).

Under the first four steps of the analysis, the burden lies with the claimant to prove disability. *Leggett*, 67 F.3d at 564. The analysis terminates if the Commissioner determines at any point during the first four steps that the claimant is disabled or is not disabled. *Id.* Once the claimant satisfies his or her burden under the first four steps, the burden shifts to the Commissioner at step five to show that there is other gainful employment available in the national economy that the claimant is capable of performing. *Greenspan*, 38 F.3d at 236. This burden may be satisfied either by reference to the Medical-Vocational Guidelines of the regulations or by expert vocational testimony or other similar evidence. *Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987). A finding that a claimant is not disabled at any point in the five-step review is conclusive and terminates the analysis. *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987).

### III.   ISSUES FOR REVIEW

Plaintiff presents only one issue for review: "The ALJ's Step Two findings are unsupported by substantial evidence, which impacted the remainder of the decision." (doc. 21 at 4.)

**A. <u>Severity Standard</u>**

Plaintiff argues that the ALJ committed error "by applying a stricter than *de minimis* standard." (doc. 21 at 14, 16.)

At step two of the sequential evaluation process, the ALJ "must consider the medical severity of [the claimant's] impairments." 20 C.F.R. § 404.1520(a)(4)(ii),(c). To comply with this

regulation, the ALJ "must determine whether any identified impairments are 'severe' or 'not severe.'" *Herrera v. Comm'r of Soc. Sec.*, 406 F. App'x 899, 903 (5th Cir. 2010). Under the Commissioner's regulations, a severe impairment is "any impairment or combination of impairments which significantly limits [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). The Fifth Circuit has held that an impairment is not severe "only if it is a slight abnormality having such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work." *Stone v. Heckler*, 752 F.2d 1099, 1101, 1104-05 (5th Cir. 1985). Accordingly, to meet the severity threshold at step two, "the claimant need only ... make a *de minimis* showing that [the] impairment is severe enough to interfere with her ability to do work." *Anthony*, 954 F.2d at 294 n.5 (citation omitted). "Because a determination [of] whether an impairment[ ] is severe requires an assessment of the functionally limiting effects of an impairment[ ], [all] symptom-related limitations and restrictions must be considered at this step." Social Security Ruling (SSR) 96-3P, 1996 WL 374181, at *2 (S.S.A. July 2, 1996). Ultimately, a severity determination may not be "made without regard to the individual's ability to perform substantial gainful activity." *Stone*, 752 F.2d at 1104.

Here, when identifying Plaintiff's impairments, the ALJ did not mention or cite the severe impairment standard set forth in *Stone*. (*See* doc. 18-1 at 22-27.) She did, however, cite SSR 85-28, which provides: "An impairment or combination of impairments is found 'not severe' ... [at step two] when medical evidence establishes only a slight abnormality or a combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work even if the individual's age, education, or work experience were specifically considered[.]" SSR 85-28, 1985 WL 56856, at *3 (Jan. 1, 1985); doc. 18-1 at 23, 25. Recently, in *Keel v. Saul*, 986 F.3d 551, 556 (5th Cir. 2021), the Fifth Circuit expressly held that SSR 85-28 is consistent with

and comports with the *Stone* standard despite the different wording, and "[r]emand is only appropriate 'where there is no indication that the ALJ applied the correct standard.'" *Id.* (comparing similar language used in *Stone* and SSR 85-28 and stating, "Though the precise wording differs, *Stone* and SSR 85-28 are not substantially different enough to warrant a finding of error" where the ALJ did not mention *Stone* but did cite to SSR 85-28).

To the extent Plaintiff claims that the ALJ erred because she recited a severity standard that differed from *Stone*, remand is not required on this basis. *See Jeansonne v. Saul*, 855 F. App'x 193, 196 (5th Cir. 2021) (citing *Keel* and stating that "SSR 85-28 comports with Fifth Circuit case law and is an acceptable reference for the proper standard for step two").

**B. <u>Severe Impairments</u>**

Plaintiff also argues that the ALJ erred when she failed to find that he had the severe impairments of obesity, degenerative disc disease, tricompartmental degenerative changes of the knee, major depressive disorder, and anxiety disorder. (doc. 21 at 14.) He claims she "cited only a few pieces of evidence" and "ke[pt] the most actual and informative exhibits out of her decision." (*Id.* at 14.) The Commissioner responds that the ALJ properly evaluated his physical and mental impairments and that he failed to show that his impairments interfered with his ability to work, particularly for any consecutive 12-month period. (doc. 22 at 4-8.)

1. *Obesity*

Plaintiff argues that the medical record contains evidence that he has the severe impairment of obesity, which "the ALJ failed to find." (doc. 12 at 14.)

"The mere presence of some impairment is not disabling per se." *Hames v. Heckler*, 707 F.2d 162, 165 (5th Cir. 1983). The disability claimant is required to show that "[]he was so functionally impaired by h[is] [impairment] that []he was precluded from engaging in any

11

substantial gainful activity." *Id.* Obesity itself is not a listed impairment, but it can reduce an individual's occupational base for work activity in combination with other ailments. *See* SSR 02-1p, 2002 WL 34686281, at *3, 6 (S.S.A. Sep. 12, 2002) ("Obesity can cause limitation of function ... [and an] individual may have limitations in any of the exertional functions such as sitting, standing, walking, lifting, carrying, pushing, and pulling. It may also affect ability to do postural functions, such as climbing, balance, stooping, and crouching."). The regulations do not state that "obesity necessarily causes any additional function limitations; rather, it provides obesity can cause such limitations." *Medrano v. Astrue*, No. A-09-CA-584-SS, 2010 WL 2522202, at *5-6 (W.D. Tex. June 17, 2010) (citing SSR 02-1p). The ALJ is not required to find any particular limitation of functions because of a claimant's obesity, but it should be considered in combination with other impairments in discussing the claimant's ability to perform sustained work activities. *See Beck v. Barnhart*, 205 F. App'x 207, 212 (5th Cir. 2006) (citing SSR 02-1p). Nonetheless, there "should be some indication in the administrative applications or medical record itself that a claimant's obesity has caused some level of functional limitation, has exacerbated other existing ailments, or has otherwise affected the claimant." *Robertson v. Berryhill*, No. 2:16-CV-249-J-BR, 2017 WL 6767373, at *6-7 (N.D. Tex. Dec. 11, 2017), *adopted by* 2018 WL 278674 (N.D. Tex. Jan. 2, 2018).

Here, Plaintiff points to two medical records from 2019 as evidence of his obesity. (doc. 21 at 15-17.) In April 2019, he was encouraged to lose weight to help address his back issues, and in July 2019, he weighed 328 and had continued to gain weight. (*Id.* at 15 (citing doc. 18-1 at 15, 16.)) The record shows that Plaintiff was assessed as obese and/or was advised to lose weight between April 2019 and August 2019. (doc. 18-1 at 278-79, 355, 357, 361, 363, 365, 416, 419, 427, 430, 433, 441-42.) The ALJ found that Plaintiff's obesity was a medically determinable

impairment that was not severe. (*Id.* at 24-25.)

Although no limitations due to obesity were alleged before the ALJ, Plaintiff now claims for the first time that his obesity and weight gain would cause more than a slight interference with his ability to engage in significant gainful activity and therefore should have been evaluated as severe. (doc. 21 at 14.) He fails to cite to any evidence in the record to demonstrate that his obesity exacerbated his other medical impairments however, or that his physicians stated that his obesity imposed additional functional limitations. *See Robertson*, 2017 WL 6767373, at *6-7 (finding no error when the ALJ "did not mention or discuss plaintiff's BMI measurements or discuss plaintiff's qualifying obesity at any level of the sequential evaluation" because "there were no opinions from any medical sources concluding plaintiff had any limitations specifically due to his weight or any evidence or testimony that his weight exacerbated his other impairments, and [no] evidence to show either that additional limitations were warranted due to plaintiff's weight").

Plaintiff has not shown that his obesity was a medical impairment severe enough to interfere with his ability to work. *See Anthony*, 954 F.2d at 294 n.5. The medical evidence instead shows substantial evidence to support the ALJ's finding that his obesity was not a medically determinable impairment that would interfere with his ability to perform work-related activities. *See Andrews v. Astrue*, 917 F. Supp. 2d 624, 639 (N.D. Tex. 2013) (finding no error when the ALJ determined an impairment to be non-severe, even though the SAMC found moderate limitations due to the impairment, because there was a lack of examining medical evidence showing any effect on the plaintiff's ability to work); *see also McDaniel v. Colvin*, No. 4:13-CV-989-O, 2015 WL 1169919 at *5 (N.D. Tex. Mar. 13, 2015) (finding that the ALJ did not err in finding impairments to be non-severe because the ALJ considered the relevant evidence in his decision and the plaintiff did not point to evidence showing "any work-related limitations beyond those already found by

the ALJ"). Accordingly, the ALJ did not err.

### 2. *Major Depressive and Anxiety Disorders*

Plaintiff also argues that because the ALJ erroneously raised the *de minimis* severity threshold to a moderate level, she failed to find his depressive and anxiety disorders to be severe impairments. (doc. 21 at 18.) He relies upon the medical records from Dr. Guerrero as evidence of his major depressive and anxiety disorders. (*Id.* (citing doc. 18-1 at 356, 445.))

Dr. Guerrero noted that Plaintiff endorsed irritability, isolation, and difficulty sleeping, and his scores on the PHQ-9 and GAD-7 screenings showed severe levels of depression and anxiety. (doc. 18-1 at 443-44.) She noted diminished interest, depressed mood, and sleep disturbance, and diagnosed moderate episode of recurrent major depression and unspecified type of anxiety disorder. (*Id.* at 440, 445.)

In her decision, the ALJ found that Plaintiff's depression and anxiety resulted in no more than "mild" limitations with understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and difficulties adapting and managing oneself. (*Id.* at 26.) She noted his September 2019 visit with Dr. Guerrero, where no mental status examination was performed. (*Id.* (citing *id.* at 62.)) She also noted that Plaintiff had normal mood, affect, behavior, judgment, and thought content in March 2019. (*Id.* (citing *id.* at 287.)) She noted that Plaintiff's function report indicated he could go out alone, perform his own personal care, manage his own finances, follow instructions, pay attention, and handle stress. (*Id.* (citing *id.* at 226-29.)) The ALJ concluded that Plaintiff's depression and anxiety were not severe medically determinable mental impairments because they did not cause limitations or restrictions having more than a minimal effect on his ability to do basic work activities, "irrespective of his age, education, or work experience." (*Id.*)

Plaintiff has not shown that his depression and anxiety were severe impairments, and substantial medical evidence instead supports the ALJ's findings that his depression and anxiety did not result in more than minimal limitations in his ability to perform work-related activities. *See Jeansonne v. Saul*, 855 F. App'x 193, 197 (5th Cir. 2021) (holding that the plaintiff's anxiety and depression were non-severe, because the evidence fell "very short" of evidence in other cases where the Fifth Circuit found error in step two related mental limitations); *Hammond v. Barnhart*, 124 F. App'x 847, 853 (5th Cir. 2005) (holding that, even though there was "some evidence that point[ed] to a conclusion that differ[ed] from that adopted by the ALJ," there was no error because there was "far more than a scintilla of evidence in the record that could justify [the] finding that [the plaintiff's] impairments were not severe disabilities"). The ALJ did not err by finding Plaintiff's depression to be non-severe, and remand is not required on this basis.

   *3. Degenerative Disc Disease and Tricompartmental Degenerative Changes of the Knee*

Plaintiff points to medical records from Parkland as evidence of his degenerative disc disease and degenerative changes of the knee. (doc. 21 at 14-16.)

In March 2019, Plaintiff was assessed with degenerative disease with slight deformity of the L2 vertebral body, and in April 2019, he reported back pain and difficulty sitting, standing, and bending. (doc. 18-1 at 278-79, 296-97, 299, 388.) Imaging revealed lumbar spondylosis that was worse at L5-S1, moderate tricompartmental degenerative changes most prominent in the medial compartment, and small suprapatellar effusion in the left knee. (*Id.* at 278-79, 283-84, 296-98.) He was assessed with L3-L5 stenosis and disc disease, and broad-based disc bulges in L3-S1 with spinal foraminal narrowing bilaterally at these levels, as well as mild palpable crepitus in the left knee with mild effusion and sacroiliac joint tenderness with straight leg raise on the left side. (*Id.*) Sitting or standing for long periods of time was not advised, and he was referred for physical

15

rehabilitation. (*Id.*) Months later, in June 2019, he reported pain in his back, knee, and ankle, and he had paraspinal lumbar tenderness and mild edema in the right knee. (*Id.* at 328-29, 331.) In July 2019, Plaintiff reported worsening lower back pain and medication that was not working; his imaging was positive for herniated discs of the lower spine. (*Id.* at 363-66.) In August 2019, his body position was assessed as 60 to 80 percent impaired. (*Id.* at 355, 361-62.)

  The ALJ did not address or mention Plaintiff's degenerative disc disease or tricompartmental degenerative changes of the knee at step two. (doc. 18-1 at 24-27.) Considering the Parkland records, she found that between March and April 2019, he had intact lower extremities strength and sensation, steady gait, normal coordination, negative straight leg raise, 5/5 motor strength, intact tandem gait, and steady gait. (*Id.* at 26 (citing *id.* at 279, 408, 419.)) Similarly, between June and July 2019, he again had 5/5 motor strength as well as independent ambulation, full lumbar range of motion, and normal joints. (*Id.* (citing *id.* at 330, 365.))

  His physical therapy medical records similarly show that his impairments due to his degenerative disc disease did not affect his work-related limitations. When Plaintiff began physical therapy for pain control in August 2019, it was noted that he had lumbar derangement, muscle imbalance, mechanical spine pain and dysfunction, postural dysfunction, and avoidance behavior. (*Id.* at 361, 433.) He was advised to continue his physical therapy at home and to begin a water exercise program, and he was discharged after only two visits because he had met his goals. (*Id.* at 355.) There is no assessment in the record as to Plaintiff's work-related limitations due to his degenerative disc disease or tricompartmental degenerative changes of the knee, and no medical provider specifically opined that he was limited.

  Despite referencing numerous Parkland medical records, Plaintiff has not shown that the degenerative disc disease was a severe impairment. Substantial medical evidence instead supports

the ALJ's finding that his degenerative disc disease and tricompartmental degenerative changes of the knee did not interfere with his ability to perform work-related activities. *See Hammond*, 124 F. App'x. at 853; *see also Leggett*, 67 F.3d at 564 (holding that a reviewing court must defer to the ALJ's decision when substantial evidence supports it). The ALJ did not err.

   4. *Harmless Error*

The Fifth Circuit has held that "[p]rocedural perfection in administrative proceedings is not required" and a court "will not vacate a judgment unless the substantial rights of a party are affected." *Mays v. Bowen*, 837 F.2d 1362, 1363-64 (5th Cir. 1988). "[E]rrors are considered prejudicial when they cast doubt onto the existence of substantial evidence in support of the ALJ's decision." *Morris v. Bowen*, 864 F.2d 333, 335 (5th Cir. 1988). In the Fifth Circuit, harmless error exists when it is inconceivable that a different administrative conclusion would have been reached absent the error. *Bornette v. Barnhart*, 466 F. Supp. 2d 811 (E.D. Tex. Nov. 28, 2006) (citing *Frank v. Barnhart*, 326 F.3d 618, 622 (5th Cir. 2003)). Accordingly, to establish prejudice that warrants remand, Plaintiff must show that consideration of the Parkland records might have led to a different decision. *See id.* at 816 (citing *Newton v. Apfel*, 209 F.3d 448, 458 (5th Cir. 2000)).

Even if the ALJ erred by finding Plaintiff's obesity, depression, and anxiety as non-severe, and by not addressing or mentioning his degenerative disc disease and tricompartmental degenerative changes of the knee at step two, the error was harmless because she found that Plaintiff's impairments, considered singly and in combination, do not significantly limit his ability to perform basic work activities. (doc. 18-1 at 27.) She noted that Plaintiff had stated in his function report that he could go out alone, perform his own personal care, manage his own finances, follow instructions, pay attention, and handle stress. (*Id.* at 26 (citing *id.* at 220-31.)) She also noted that only Dr. Simonson determined he was unable to work and should avoid prolonged sitting and

17

standing due to his lumbago. (*Id.* at 27 (citing *id.* at 275.)) She found his one-page physician's statement unpersuasive because it merely assessed his "temporary" limitations, was not supported with specific findings, and was inconsistent with Plaintiff's good grip strength, 5/5 motor strength, normal range of motion, and independent ambulation. (*Id.* (citing *id.* at 275.)) Plaintiff has not shown that consideration of the Parkland records might have led to a different decision. *See Keel*, 986 F.3d at 556 (citing *Frank*, 326 F.3d at 622). Accordingly, remand is not required.

### IV.  RECOMMENDATION

The Commissioner's decision should be **AFFIRMED**.

**SO RECOMMENDED** on this 16th day of June, 2022.

*[signature]*
IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

### INSTRUCTIONS FOR SERVICE AND
### NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

*[signature]*
IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE